```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

LINDSTROM & McKENNEY, INC.,     )
                                )
          Plaintiff,            )
                                )
     v.                         )      No. 4:09 CV 1169 DDN
                                )
 NETSUITE, INC.,                )
                                )
          Defendant.            )

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendant NetSuite, Inc. to dismiss for failure to state a claim. (Doc. 9.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 15.)

**I. BACKGROUND**

On January 23, 2009, plaintiff Lindstrom & McKenney, Inc. (Lindstrom) commenced this action against NetSuite, Inc. in the Circuit Court of St. Louis County. (Doc. 1, Ex. B at 12-17.) According to the complaint, Lindstrom and NetSuite entered into an agreement, by which Lindstrom agreed to purchase NetSuite's software and services for one year, for $125,000. (Id. at ¶ 4.) Lindstrom alleges that NetSuite represented that it would perform various "Front Office Functions," and "Back Office Functions." (Id. at ¶¶ 6-12.) Lindstrom further alleges that NetSuite agreed to provide "Dashboards," "Configuration," "Data Migration," and an "E-Bay Integration Module." (Id. at ¶¶ 13-14.) According to the complaint, NetSuite has failed to perform any of these functions or services, in breach of the agreement. (Id. at ¶ 15.) Lindstrom alleges it has paid NetSuite about $100,000, as required by the agreement. (Id. at ¶ 18.)

In Count I, Lindstrom asserts a claim for breach of contract. (Id. at 14-16.) In Count II, Lindstrom asserts a claim for unjust enrichment. (Id. at 16-17.)

On July 24, 2009, NetSuite removed the case to this court, invoking diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a). (Doc. 1 at ¶ 6.)

## II.  MOTION TO DISMISS

NetSuite moves to dismiss both counts of the complaint. (Doc. 10.) First, NetSuite argues that, under the contract, it never agreed to provide the functions and services at issue. Second, NetSuite argues that Lindstrom has failed to allege that the purported breaches were material. (Docs. 10, 17.) In response, Lindstrom argues that the alleged problems are related to functions and services that NetSuite agreed to provide under the agreement. (Doc. 16.)

## III.  MOTION TO DISMISS STANDARD

The defendants move to dismiss the case for failure to state a claim upon which relief can be granted under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003). In 2007, the Supreme Court issued a new standard for evaluating motions to dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (overruling the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Despite overruling the Conley standard, the Supreme Court cautioned that it had not created a heightened pleading standard. Bell Atlantic, 550 U.S. at 569 n.14, 570.

Under Bell Atlantic, a complaint must include enough facts to state a claim for relief that is plausible on its face. Id. at 570. If the claims are merely conceivable - but not plausible - the court must dismiss the complaint. Id. To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. A complaint does not, however, need specific facts; a complaint only needs to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam). The Federal Rules of Civil

Procedure demand only that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, the allegations must still be enough to "raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555.

A complaint must be liberally construed in the light most favorable to the plaintiff. See id. Moreover, a court must accept the facts alleged as true, even if doubtful. Id. Thus, a well-pled complaint may proceed even if it appears the recovery is very remote or unlikely. Id. To warrant dismissal, the plaintiff's entitlement to relief must fall short of being plausible. Id. at 569 n.14, 570.

## IV. DISCUSSION

**Count I: Breach of Contract**

To recover for breach of contract, Lindstrom must prove: (1) a valid contract existed between the parties, (2) it performed the contract or had an excuse for nonperformance, (3) NetSuite breached the contract, and (4) it suffered damages as a result. Wall Street Network, Ltd. v. New York Times Co., 80 Cal. Rptr. 3d 6, 12 (Cal. Ct. App. 2008). In this case, NetSuite argues that Lindstrom cannot state a claim for breach of the contract terms, because it never agreed to provide the functions and services at issue. The question, therefore, is what promises NetSuite made on its side of the contract.

**Contract Interpretation**

The basic goal of contract interpretation is to give effect to the mutual intent of the parties at the time of contracting. Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 135 Cal. Rptr. 2d 505, 513 (Cal. Ct. App. 2003). If the contract has been reduced to writing, that writing defines the parties' intentions, to the extent possible. Id. When a court interprets a contract, the words of the agreement are given their ordinary and popular sense, unless the parties intended otherwise. Id.; S. Pac. Transp. Co. v. Santa Fe Pac. Pipelines, Inc., 88 Cal. Rptr. 2d 777, 783 (Cal. Ct. App. 1999). "[R]eliance on the common understanding of

language is bedrock [law]." Velazquez v. GMAC Mortgage Corp., 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008).

The language of a contract must also be interpreted as a whole, and according to the circumstances of the case; it cannot be found ambiguous in the abstract. ASP Props. Group v. Fard, Inc., 35 Cal. Rptr. 3d 343, 351 (Cal. Ct. App. 2005). Courts may not strain to create ambiguities if none exist. Id. A contract provision is ambiguous if the provision is capable of two or more reasonable interpretations. Velazquez, 605 F. Supp. 2d at 1069. If a contract provision is either patently or latently ambiguous, the court can admit extrinsic evidence. S. Pac. Transp. Co., 88 Cal. Rptr. 2d at 783. Extrinsic evidence is admissible whenever it is "relevant to prove a meaning to which the language of the instrument is reasonably susceptible." Id. To that end, the court should not grant a motion to dismiss if the contract leaves doubt as to the parties' intent. Velazquez, 605 F. Supp. 2d at 1069.

In this case, NetSuite and Lindstrom signed the NetSuite Subscription Services Agreement (agreement) on May 31, 2008. (Doc. 12 under seal at 7.) The agreement provides, in relevant part,

> **4.2. Fees and Payment.** Customer shall pay a total fee of $125,000.00 for the licenses and services listed on the attached Estimate No(s). 89864 (Exhibit A), which is hereby fully incorporated herein by reference. In the event that NetSuite provides certain professional services to customer, such professional services fees shall be included in the Estimate and shall be more fully described in the attached Statement of Work (Exhibit B), which, if applicable, is hereby fully incorporated herein by reference.

(Id. at 1.) The agreement also contains an integration clause, stating that the agreement and its exhibits and/or attachments represents the entire agreement, and are intended to be the final expression of the agreement. (Id. at 6.) Finally, the agreement states that the law of California and any controlling federal law governs the contract. (Id.)

Estimate No. 89864 and the Statement of Work (SOW) were each attached to the agreement. (Id. at 10-37.) The estimate and the SOW each discuss, respectively, "eBay Integration," and "eBay Setup & Deployment." (Id. at 10, 21.) The estimate states, in relevant part,

| Item | Qty | Description | Term Mos | Amount |
|---|---|---|---|---|
| eBay Integration Module | 1 | eBay Integration for up to 1,500 Transactions (sales orders) per month.<br>**Allows export of items from NetSuite into eBay<br>**Allows real time imports of sales transactions from eBay into NetSuite<br>**Transaction volume is monthly, based on annual usage | 12 | 8,388.00 |

(Id. at 10.)

The SOW states, in relevant part,

This Statement of Work ("SOW") describes the services to be performed by NetSuite Inc. ("NetSuite") for the Customer ("Customer") (collectively "Parties") pursuant to the NetSuite License Agreement or Subscription Services Agreement (the "Agreement") executed between the Parties. Once executed by the Parties, this SOW shall be incorporated by reference into the Agreement. In the event of any inconsistency or conflict between the terms and conditions of this SOW and the Agreement with respect to the subject matter of this SOW, the terms and conditions of this SOW shall govern.

. . .

**1.5  NetCommerce**

The following options have been selected for the source of the NetCommerce online content, the source of the online catalog, and the shopping cart approach:

| **Online Content** | **Online Catalog** | **Shopping Cart** |
|---|---|---|
| • NetSuite Generated | • NetSuite Generated | • NetSuite Generated |

The following options will be implemented for additional NetCommerce capabilities:

| **Functionalities** | Description |
|---|---|
| eBay Setup & Deployment | •   Setup Token and Global Settings<br>•   Setup Item Information Settings (for listing on eBay Store)<br>•   Setup Item Listings/Import Sales Orders |

(Id. at 14, 20-21.)

In the complaint, Lindstrom alleges that NetSuite breached the agreement by failing to provide a number of services related to the eBay service provisions. (Doc. 1, Ex. B at ¶ 15.) In particular, Lindstrom alleges that it was unable to: (1) use multiple eBay Seller accounts; (2) manage its inventory in NetSuite because there was no way to autogenerate the next available item number; (3) use multiple eBay templates; (4) obtain support for eBay categories/item specifics; (5) manage images on its external FTP server; (6) track the fees charged per item on eBay; (7) automatically notify winning bidders on eBay; and (8) automatically notify past due auction winners. (Id. at ¶ 15(a),(b),(e)-(j).) Lindstrom further alleges that NetSuite represented that its services would perform these functions. (Id.)

EBay is a popular website that allows private sellers to list goods they wish to sell, either at a fixed price or through an auction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 390 (2006). A seller advertises the item on the eBay interface by using the website's template. Action Tapes, Inc. v. Weaver, No. Civ. 3:05-CV-1693-H, 2005 WL 3199706, at *2 n.2 (N.D. Tex. Nov. 23, 2005). Buyers purchase or bid on the item through the eBay interface. Id. To complete the sale, eBay puts the seller in touch with the buyer, so they can arrange for payment and shipping. Id. A seller may upload images of the item for sale to the eBay interface. See Bose Corp. v. Silonsonnic Corp., 413 F. Supp. 2d 339, 346 (S.D.N.Y. 2006). According to the complaint, Lindstrom is a company that helps people and institutions market or dispose of unwanted valuables. (Doc. 1, Ex. B at ¶ 1.)

The services described in ¶ 15(a),(b),(e)-(j) are not explicitly included or excluded by any provision of the agreement. However, looking to the terms of the estimate and the SOW, it is entirely plausible that a contract that promised to set up eBay "Item Listings" and eBay "Item Information Settings," and to accommodate up to 1,500 eBay sales transactions a month, would naturally include these services. The allegations in ¶ 15(a),(b),(e)-(j) survive the motion to dismiss. See Velazquez, 605 F. Supp. 2d at 1069 ("[A] motion to dismiss should

not be granted where the contract leaves doubt as to the parties intent.").

The SOW also discussed "Back Office Functions." (Doc. 12 under seal at 16-17.) The SOW states, in relevant part,

**1.2   Back Office Functions**

| Functionalities | Description |
|---|---|
| Accounting | • Accounts Receivable<br>  • Invoicing<br>  • Payments: Credit Card, EFT, PayPal<br>  • Customer Credits<br>• Accounts Payable<br>  • Bills<br>  • Checks: Online Bill Pay, ACH Payments<br>  • Vendor Credits |
| Item Management | • Item record setup, configuration, and management<br>  • Item pricing setup and configuration<br>  • Price schedules, levels & quantity pricing<br>• Assemblies and Kits<br>• Multi-location Inventory<br>• Review existing NetSuite Item/Inventory reports |
| Purchasing | • Purchase Order record setup, configuration, and management<br>• Purchasing/Vendor management<br>• Review existing NetSuite Purchasing reports<br>• Vendor Center |

(Id.)

In the complaint, Lindstrom also alleges that NetSuite breached the agreement by failing to provide services that would allow it to: (1) manage its inventory in NetSuite because there was no way to autogenerate the next available item number; and (2) control the access of customer vendor records and regular vendor records. (Doc. 1, Ex. B at ¶ 15(b),(c).) Lindstrom further alleges that NetSuite represented that its services would perform these functions. (Id.)

The services described in ¶ 15(b),(c) are not explicitly included or excluded by any provision of the agreement. However, looking to the

terms of the SOW, it is entirely plausible that a contract that promised "Item record setup, configuration, and management," "Purchase Order record setup," "Purchasing/Vendor management," and a "Vendor Center," would naturally include these services. The allegations in ¶ 15(b), (c) survive the motion to dismiss. See Velazquez, 605 F. Supp. 2d at 1069.

The agreement does not clearly and unambiguously exclude the functions and services described in ¶ 15. The motion to dismiss Count I is denied in its entirety. See Rogers v. Prudential Ins. Co., 267 Cal. Rptr. 499, 502 (Cal. Ct. App. 1990) ("[W]hen the terms of a contract are ambiguous or uncertain, it is the duty of the trial court to construe it after the parties are given a full opportunity to produce evidence of the facts, circumstances and conditions surrounding its execution as well as the conduct of the parties to the contract. . . .").

**Material Breach**

NetSuite argues that Lindstrom failed to allege that the breaches were material.

Any failure to comply with the terms of a contract constitutes a breach of the contract. Superior Motels, Inc. v. Rinn Motor Hotels, Inc., 241 Cal. Rptr. 487, 495 (Cal. Ct. App. 1987). However, not every breach justifies terminating a contract. Id. To terminate a contract, a breach must be material, substantial, or total. Id. There is no bright line that divides a material breach from a trivial one. Id. Accordingly, "whether a breach is so material as to constitute cause for the injured party to terminate a contract is ordinarily a question for the trier of fact." Id. at 496.

Accepting the allegations in the complaint as true, a jury could plausibly find the purported breaches were material. The fact that the complaint does not specifically allege that the breaches were material is not fatal to the complaint.

**Count II: Unjust Enrichment**

To recover for unjust enrichment, Lindstrom must prove that NetSuite received a benefit, and unjustly retained that benefit at

Lindstrom's expense.  Peterson v. Cellco P'ship, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008).  In the complaint, Lindstrom alleges it paid NetSuite over $100,000, yet failed to receive the products and services promised by the agreement.  (Doc. 1, Ex. B at ¶ 18-19.)  Accepting these allegations as true, Lindstrom has stated a claim for unjust enrichment.

## V.   CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant NetSuite, Inc. to dismiss for failure to state a claim (Doc. 9) is denied.


　　　　　　　　　　　　　　　　　　 /S/   David D. Noce　　　　
　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**


Signed on November 5, 2009.